RECEIVED

OCT - 5 2009

TONY R. MOORE CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| RYAN MARINE SERVICES, INC., ET AL | CIVIL ACTION NO. 06-2245 (LEAD)<br>08-0167 (MEMBER) |
| VERSUS | JUDGE DOHERTY |
| HUDSON DRYDOCKS, INC. | MAGISTRATE JUDGE HILL |

## MEMORANDUM RULING

Pending before the Court is a Motion for Partial Summary Judgment [Doc. 54] filed by Great American Insurance Company of New York ("Great American"). In its motion, Great American "moves for partial summary judgment . . . with regard to the coverage issues addressed in its Memorandum in Support." Specifically, Great American seeks summary judgment on grounds coverage for certain damages claimed by plaintiff Ryan Marine against Hudson in the main demand is excluded by the Marine Commercial Liability Insurance Policy and, specifically, the Ship Repairer's Legal Liability Endorsement to that policy, issued by Great American to its insured, Hudson. Hudson Drydocks, Inc. ("Hudson") opposes the motion [Doc. 40].

After review of the briefs of the parties and the policy at issue, the instant motion is DENIED, as resolution of the instant motion keys to "those sums that the insured *becomes legally obligated to pay* as damages because of 'bodily injury' or 'property damage' to which this insurance applies," as set forth in the "Insuring Agreement" provision of the Marine Commercial Liability portion of the policy. Because the parties have not delineated with specificity what their "claims" are in this lawsuit, whether their "claims" are alleged under tort, contract, or quasi-contract, and what law applies to their "claims," this Court cannot determine whether there are any "sums" the insured might theoretically be obligated to pay. Specifically, with respect to tort, plaintiff has not alleged what law governs its alleged tort "claims," should any of those "claims" arise in tort. Additionally,

to the extent the instant case involves an alleged verbal contract or quasi-contract,[1] if Louisiana law applies, there are specific provisions that will apply to such a contract. This Court has not been provided with the law governing such contract and is unclear as to whether contract claims would be governed by the policy at issue. Without knowing what cause of actions might be before the court, this Court cannot determine what remedies might be allowed and/or what damages might be claimed and thus, whether "loss of use" would be allowable, under the applicable law.

The policy contains not only the Insuring Provision that requires payment of "those sums that the insured *becomes legally obligated to pay* as damages because of 'bodily injury' or 'property damage' to which this insurance applies," but also contains a provision stating Great American will pay for "property damage," which is a defined term, if such "property damage" is caused by an "occurrence," which is defined as an "accident," which is not a defined term. *See* Section VIII(15) of the Marine Commercial Liability Policy. As to the "allegations" of the necessity of additional repairs made by the plaintiff, alleged resultant delay and thus "loss of use" which this Court will refer to as the "poor work allegations,"[2] such allegations must arise out of an "accident" to fall within an "occurrence," which resulted in "property damage," pursuant to the language of the policy. On its face, this Court cannot determine – without knowing the true nature of the "claims" alleged by the parties, and without the underlying facts having been stipulated to **by all parties involved and who are relevant to the issue,** and identifying what, therefore, constitutes a cause of action or right of action, a remedy, or damages, and – whether the "loss of use" arises from the "poor work

---

[1] The repair contract between Ryan marine and Hudson is reflected in a letter agreement signed by the parties on December 29, 2005. To the extent this contract was modified in any way, such modifications were verbal.

[2] Again, this Court notes the parties have not sufficiently delineated those argued "claims," whether the "claims" arise in contract, quasi-contract, or tort, and what law applies to those "claims," and what remedies might flow from the specific cause of action or right of action, and what damages are a result of what conduct, arising out of tort or contract. Arguably, the remedies and allowable damages under tort and contract would not necessarily be the same, and thus coverage for "loss of use" would, also be impacted.

2

allegations" or "the fire" allegations, and whether either is the result of an "accident" and thus, an "occurrence." Although common sense and logic would argue those allegations[3] of poor work performed would not be the result of an "accident," this Court does not have sufficient information at this time to make a determination on that issue, particularly as the parties fail to discern between any causes of action, rights of action, remedies, and damages – referring to any and all as "claims." Thus, the movant has not carried its burden on this point.[4]

This Court further notes those provisions of the Insuring Agreement which specifically exclude coverage for "Damage to Impaired Property or Property Not Physically Injured" (Section I(2)(N)) and "Recall of Products, Work or Impaired Property" (Section I(2)(O)), which exclude coverage for "property damage" to "property that has not been physically injured arising out of . . . a defect . . . in 'your work,'" and which excludes "[d]amages claimed for any loss, cost or expense incurred by you or others for the loss of use of . . . 'your work' . . . if such product is withdrawn or recalled from the market or *from use* by any person or organization because of a known or suspected

---

[3] For example, Paragraph XII of plaintiff's Amended Petition alleges:

XII.
The repair work was unsatisfactory both in quality and cost. Hudson utilized unqualified personnel, which resulted in the necessity to have work redone and, therefore, caused the vessel to be in drydock longer than normal or reasonable for the scope of work. This caused lost profit to Ryan. Hudson's unqualified personnel also caused a fire on the vessel during the repair. The cleanup and repair after the fire also caused the vessel to be in drydock longer than normal or reasonable for the scope of work. This caused lost profit to Ryan.

*See* Doc. 32, First Amended and Supplemental Complaint, ¶XII.

Although Hudson and Great American appear to have stipulated in their briefs that "[r]epairing the fire damage did not delay the overall work on the vessel," *see* Hudson's Statement of Uncontested Material Facts, No. 14, and Hudson's stipulation in response that "any repairs related to the fire damage were complete and did not delay any of Hudson's work or overall work on the vessel as stated and supported in Great American's Statement of Uncontested Material Facts No. 14," based upon the allegations contained in Paragraph XII of Ryan Marine's Complaint, Ryan Marine clearly does not join in said stipulation. This further bolsters this Court's conclusion that the coverage issue raised in the instant motion cannot be resolved until the underlying claims in the lawsuit have been resolved.

[4] However, this Court, also, notes the plaintiff has not delineated its "claims," as explained in footnote 2.

3

defect, deficiency, inadequacy, or dangerous condition in it." The foregoing provisions have been addressed by no party to this litigation, despite the language contained in the applicable Marine Commercial Liability portion of the policy that the "entire policy" must be read "to determine rights, duties and what is and is not covered." However, neither party has addressed this language or how this language might, or might not, interact with the endorsement presently argued. Additionally, if this Court were to find the "poor work" "claims" are not within the policy coverage, but the "claims" flowing from the fire were, this Court nonetheless cannot rule as to an alleged "loss of use" as it is in no way clear which or what "claims" for "loss of use" flow from what alleged "occurrence," nor which "claims" arising from which alleged "occurrence," movant asks this Court to exclude from coverage, or whether they arise out of the "poor work," "the fire," and what "use" of the vessel, if any, was alleged "lost," separate and apart from certain charters.

However, the foregoing does not necessarily end this nebulous inquiry, as both parties focus on the Ship Repairer's Liability Endorsement as controlling, and this Court notes that Endorsement, itself, incorporates the defined terms "property damage" and "occurrence," therefore the necessity for an "accident," as noted above, would seem to apply to the Endorsement, as well.[5] Thus, even as to the Endorsement, arguably, if there has been no "accident," "loss of use," no matter from where it might flow, would seem to be excluded as there can be no "occurrence," and thus, no coverage for "property damage." However, to the extent this Court cannot determine from what "claim" the "loss of use" flows, this Court cannot make the determination requested.

Arguably, however, perhaps, one need not even reach the "Exclusions and Limitations" provision in Paragraph 4 of the Endorsement in order to exclude coverage for damages, causes of

---

[5] This Court notes the Endorsement specifically addresses the definition of "property damage," but only to amend the term to include liability for costs of the removal of wreckage of watercraft, a provision that does not appear to apply in the instant litigation.

4

action, rights of action or remedies which do not flow from an "occurrence," as arguably only the "fire" could constitute an "occurrence" – and, as it is disputed, at least by Ryan, as to whether delay from the fire resulted in any "loss of use" was caused by poor work, or a combination of both, this Court cannot make the required coverage determination.

Additionally, as this Court has noted previously, without agreement as to what "use" of the vessel is alleged to have been lost, as damages, this Court, also, cannot determine whether the exclusion of "charter parties" would preclude coverage of whatever loss of use might be claimed as damages, and might flow from a cause of action or right of action alleging "loss of use," as an allowable damage. The requests for admissions do not resolve this dispute and thus, again, this Court is left without sufficient information in order to grant the relief requested. Thus, based on the foregoing, the parties' focus on the narrow language contained in Paragraph 4 of the Endorsement would seem to be misplaced. However, as neither party has fully addressed the provisions noted above, no clarification has been made as to the "use" that is alleged was lost, and as the plaintiff has not articulated what legal "claims" it is making as against the defendant, and as the policy itself applies only to "those sums that the insured *becomes legally obligated to pay* as **damages** because of 'bodily injury' or **'property damage'** to which this insurance applies," and "property damage" incorporates and "occurrence" which incorporates an "accident," this Court cannot determine whether there is coverage or whether there is not coverage under the policy.

For the foregoing reasons, Great American's motion for partial summary judgment is DENIED in its entirety.

THUS DONE AND SIGNED in Lafayette, Louisiana, this 5th day of October, 2009.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

5