RECEIVED

JAN 2 1 2011

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

RYAN MARINE SERVICES, INC., ET AL        CIVIL ACTION NO. 06-2245 (LEAD)
                                                                            08-0167 (MEMBER)

VERSUS                                                      JUDGE DOHERTY

HUDSON DRYDOCKS, INC.                       MAGISTRATE JUDGE HILL

## MEMORANDUM RULING

Pending before the Court are two motions: (1) Motion for Partial Summary Judgment [Doc. 143] filed by third-party defendant J&T Contractors, Inc. ("J&T"), and (2) Motion for Partial Summary Judgment [Doc. 148] filed by third-party defendant Alea London Limited ("Alea"). In its motion, J&T seeks dismissal of the breach of contract and contractual indemnity claims asserted against it by defendant and third-party plaintiff, Hudson Drydocks, Inc. ("Hudson"). Alea, which filed its motion after J&T, essentially piggybacks J&T's motion, seeking the same relief. Alea also seeks dismissal of Hudson's direct action against Alea for J&T's alleged breach of contract, on grounds the Louisiana Direct Action Statute, which provides the basis for Hudson's direct action against Alea, is limited to actions in tort

For the following reasons, the pending motions for partial summary judgment are GRANTED IN PART AND DENIED IN PART for failure of the parties to carry their burdens.

I.        **Factual and Procedural Background**

          A.        **The Undisputed Facts**

The following facts are undisputed by the parties:

1.  In 2006, Columbia Star, Inc. owned and Ryan Marine Services, Inc. ("Ryan") operated the MR. SONNY, a/k/a M/V RMS CITATION.[1]

2.  Ryan Marine hired Hudson to perform repairs to the MR. SONNY.

3.  In association with repairs to the MR. SONNY, Hudson hired subcontractors to assist with the job, including welders and fitters supplied by J&T.

4.  Hudson and J&T entered into a Contractor/Subcontractor Master Indemnity Agreement ("Master Indemnity Agreement") on September 9 of an unspecified year. The parties do not appear to dispute that, despite the absence of a year on the contract, the contract was executed on September 9, 2005. Neither party disputes that an indemnity agreement was in place and in effect between the parties at the time of the subject dispute.[2]

5.  Ryan Marine claims in 2006, the MR. SONNY sustained fire damages in a fire that occurred while in drydock at Hudson's shipyard while undergoing repairs.

6.  Ryan Marine filed a claim against Hudson for alleged damages sustained by the MR. SONNY in the fire. In Paragraph IX of Ryan Marine's complaint, Ryan Marine alleges:

IX.

The repair work was unsatisfactory both in quality and in cost. Hudson utilized unqualified personnel, which resulted in the necessity to have work redone, and, therefore, caused the vessel to be in drydock longer than normal or reasonable for the scope of work. This caused lost profit to Ryan. Hudson's unqualified personnel also caused a fire on the vessel during the repair. The cleanup and repair after the fire also caused the vessel to be in drydock longer than normal or reasonable for the scope of work. This caused lost profit to Ryan.

7.  Hudson asserted a third-party demand against J&T on October 26, 2009 [Doc. 75].

---

[1] For the sake of clarity, and for purposes of this motion, this Court will refer to the vessel in question as the MR. SONNY.

[2] The document entitled "Contractor/Contractor Master Indemnity Agreement," executed by Hudson and J&T, is dated September 9, however no year is provided. Nevertheless, John Yates, the owner of J&T, testified the contract was entered into on the same date as the issuance of a certificate of insurance to Hudson, which occurred on September 9, 2005. J&T does not dispute the foregoing.

8.     In Paragraphs 7-9 of its third-party demand, Hudson alleges:

7.

Hudson has responded to [Ryan Marine's] suit denying all liability as per its original Answer as well as its Answer to the Supplemental Complaint which is filed in this record and served with this Third Party Complaint, a copy of Hudson's Answer to the Supplemental Complaint being attached as Exhibit "B" and made a part hereto. Hudson adopts as if copied herein in extenso, its Answer to the Original and Supplemental Complaints of the plaintiffs, but herein pleads alternatively that the third defendant[] J&T Contractors, Inc .[3] . . . and/or their employees were negligent and/or at fault in their operations conducted on board the [MR. SONNY] on or about January 31, 2006, which fault or negligence on the part of J&T Contractors' employees . . . caused the fire on board the vessel which is complained about by the plaintiffs in the original action.

8.

In the further alternative, should any party be at fault other than the plaintiffs as pled under the contributory negligence theories, third party plaintiff, Hudson, specifically avers that the fire and the damages complained of in the principal action were proximately caused by the negligence and/or fault and/or liability of the third party defendant[], J&T Contractors, Inc....whose liability is insured by ALEA London, LTD., entitling the third party plaintiff Hudson to a judgment of indemnity and/or contribution against third party defendant[] for all or part of what the plaintiff in the original demand may recover from Hudson Drydocks, Inc.

9.

In the further alternative, third party plaintiff, Hudson, avers that third party defendant J&T Contractors, Inc....[was] under contract to Hudson Drydocks to supply competent welders to complete any and all work on the [MR. SONNY], and should Hudson be liable directly to the plaintiffs for breach of contract in this regard, then third party

---

[3] Originally, Hudson and its insurer, Great American Insurance Company, asserted third-party claims against J&T and another contractor, Beoufway Contractors, LLC. Additionally, after Beoufway was brought into the suit *via* the third-party complaint of Hudson, Ryan Marine asserted independent claims against Beoufway. However, on March 12, 2010, Hudson, Great American, and Ryan Marine dismissed their claims against Beoufway Contractors, Inc. [Doc. 114], which is no longer a party to this lawsuit.

> defendant[], J&T Contractors . . . and [its insurer] would be liable to
> Hudson Drydocks for any and all breach of its obligations to Hudson
> with regard to supplying employees and competent personnel to
> perform the repairs on the M/V MR. SONNY.

In addition to the foregoing stipulated facts, in their motions for partial summary judgment, J&T and Alea set forth the testimony of Lance Devillier, who testified J&T provided "appropriate skilled labor" for the welding job; Hudson was satisfied with the quality of J&T's work; the fire that occurred on the vessel played no part in Hudson's termination of J&T; and Hudson did not terminate any J&T employees for poor job performance. In its response brief, Hudson agrees the welders provided by J&T were not unqualified and argues Ryan Marine has failed to demonstrate the fire was caused by the welders. However, to the extent the cause of the fire remains a contested fact, Hudson argues should a jury determine the fire was caused by a J&T welder, then J&T breached its contract with Hudson to provide competent welders. For this reason, Hudson argues summary judgment is not appropriate.

Before addressing the legal issues at play, this Court, also, notes there is a factual dispute between J&T/Alea and Hudson regarding which entity – Hudson or J&T – had the responsibility for supervision of J&T's welders and the overall safety aspect of the welding job during the time the welders provided services on the MR. SONNY. In its motion, J&T argues it provided fitters, combination fitters/welders, and welders to Hudson pursuant to the Master Indemnity Agreement between Hudson and J&T. J&T argues Hudson would contact a J&T representative and advise J&T as to the number of individuals needed, and J&T would send the requested number of employees to Hudson. J&T argues its employees punched a Hudson time clock and were supervised by a Hudson foreman. J&T argues its employees received their work orders from the Hudson foreman, who

directed job, and Hudson provided equipment for the job, including welding rods, leads, and machines for the welders' use, thus, J&T argues Hudson, not J&T would have any possible liability for any alleged substandard conduct of a J&T provided welder.

In response, Hudson points to Article II of the Master Indemnity Agreement between J&T and Hudson, which states:

> Contractor/Subcontractor shall perform all work as an independent contractor. Shipyard retains and will exercise only the authority and right to direct and control the manner in which all work for Shipyard is performed. Shipyard shall have no right or authority to supervise, instruct, or give orders to any of Contractors's/Subcontractor's employees, agents, nor the employees of any of Contractors/Subcontractor's subcontractors; all such persons shall remain under Contractor's/Subcontractors's direct and sole supervision and control at all times. It is the express understanding and intention of the parties that Contractor/Subcontractor shall act as an independent contractor at all times, that no relationship of master and servant or principal and agent shall exist between Shipyard and any employees, agents or representatives of Contractor/Subcontractor and that all work or services covered hereby shall be performed at the sole risk of Contractor/Subcontractor.

Hudson further points to Article V of the Master Indemnity Agreement between Hudson and J&T, which states J&T agreed "safety remains the primary responsibility of Contractor/Subcontractor," and that Hudson's safety program was not intended to replace the safety program of J&T. Hudson cites the testimony of Mr. Devillier, who testified Hudson would have expected qualified welders and fitters to inspect the areas around which they were cutting and burning for combustibles, suggesting it was the responsibility of the welders – and not Hudson – to make sure the environment for welding aboard the vessel was safe. Hudson further cites the testimony of John Yates, the former owner of J&T, who testified J&T did no training or orientation for safety at the time J&T provided welders to Hudson. Thus, Hudson argues "J&T is liable to Hudson for breach of its contractual obligation regarding supply[ing[] qualified fitters with regard

to any claim asserted against Hudson for the action of J&T's employees under this agreement, assuming that Hudson is found liable for the action of J&T welders/fitters either related to the fire or for incompetent work." In light of the arguments and evidence presented by the parties, notwithstanding the other deficiencies in the instant motions that make certain aspects of the requests for relief unripe for disposition, there is a factual dispute regarding who had supervision and control over the welders and which entity – Hudson or J&T – was responsible for the safety of the welding project.

## II.    Summary Judgment Standard

"A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." FED. R. CIV. PROC. 56(b). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. PROC. 56©.

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

FED. R. CIV. PROC. 56(e).

As summarized by the Fifth Circuit in *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir. 1994):

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on

which the movant bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). However, where the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. Id. at 322; *see also, Moody v. Jefferson Parish School Board*, 2 F.3d 604, 606 (5th Cir.1993); *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir.1991). Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The Supreme Court has instructed:

The plain language of Rule 56© <u>mandates</u> the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Where no such showing is made, "[t]he moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."

. . . .

. . . In ruling upon a Rule 56 motion, "a District Court must resolve any factual issues of controversy in favor of the non-moving party" only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from "assuming" that general averments embrace the "specific facts" needed to sustain the complaint. As set forth above, Rule 56(e) provides that judgment "shall be entered" against the nonmoving party unless affidavits or other evidence "set forth specific facts showing that there is a genuine issue for trial." The object of this provision is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit. Rather, the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues.

*Lujan v. National Wildlife Federation*, 497 U.S. 871, 884, 888-89 (1990)(quoting *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322-23 (1986)).

The Fifth Circuit has further elaborated:

> [The parties'] burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. ...[S]ummary judgment is appropriate in *any* case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.

*Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*)(citations and internal quotations omitted).

Finally, in evaluating evidence to determine whether a factual dispute exists, "credibility determinations are not part of the summary judgment analysis." Id. To the contrary, "in reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir. 2001).

## III.   Law and Analysis

In its third-party complaint against J&T and Alea, Hudson asserts claims against J&T and Alea for the following: (1) breach of contract; (2) contractual indemnity; (3) tort indemnity; and (4) insurance coverage.[4] In their motions for partial summary judgment, J&T and ALEA jointly argue the contract that forms the basis of Hudson's third-party complaint against J&T and Alea is a

---

[4] Although not addressed by the parties in their briefs, it appears to this Court Hudson, also, asserts a claim for negligence against J&T. *See* Paragraph 7 of Hudson's third party complaint against J&T ("Hudson ....herein pleads alternatively that the third party defendant[] J&T . . . and/or their employees were negligent and/or at fault in their operations conducted on board the M/V Mr. Sonny . . .which fault or negligence on the part of J&T's . . . employees . . . caused the fire on board the vessel...." [Doc. 75].

Contractor/Subcontractor Master Indemnity Agreement dated September 9, 2005.  J&T and Alea

argue "[a]ccording to the Master Indemnity Agreement, J&T agreed to supply welders and fitters to

Hudson in association with Hudson's work being performed on the [MR. SONNY]."  However,

nowhere in their motions do J&T or Alea identify the specific provision or provisions of the contract

that that evidences this agreement, therefore, the particular terms of the obligation under which J&T

was to provide workers to Hudson is not known to the Court.  In their motions, J&T and Alea argue

there is no basis for "contractual indemnity" in the language of the contract; there can be no recovery

by Hudson for "tort indemnity" as a matter of law; and there is an absence of evidence showing J&T

breached its contract to provide competent welders to Hudson.  Accordingly, J&T and Alea seek

dismissal of the foregoing claims.  Separately, Alea seeks dismissal of Hudson's direct action against

it.

### 1.    Hudson's "Contractual" Claims

As noted hereinabove, the parties have characterized Hudson's claims against J&T as claims

for "breach of contract" and for "contractual and tort indemnity."  In its motion, J&T argues the

"nature of [Hudson's] indemnity claim is not entirely clear."  This Court agrees, concluding

Hudson's claims for "contractual indemnity" against J&T and Alea do not appear to be traditional

claims for indemnity pursuant to a specific provision of the contract.  Rather, Hudson appears to be

arguing that should Ryan Marine prevail on its claim alleging substandard conduct and/or work on

the part of the J&T welders hired by Hudson, then the general work provisions of the Master

Indemnity Agreement between J&T and Hudson would, of necessity and logic, have been breached,

and, as a result of that breach, Hudson would have sustained damages, i.e. the amount it might have

to respond in damages to Ryan Marine, as a result of the substandard work or conduct of the J&T

welders.  Indeed, Hudson argues it would be entitled to "contribution" in such a situation in the amount of Hudson's liability to Ryan.  Hudson appears to argue in the event of a contractual breach, its damages would be any amounts Hudson might be found to be liable to Ryan Marine pursuant to Ryan Marine's claims against Hudson, both in contract and tort.  In such event, Hudson seeks to be "made whole" by J&T, by J&T's indemnifying Hudson for any amount Hudson might have been found to owe Ryan Marine as a result of the alleged substandard conduct and work by the J&T welders.  Thus, although the parties address Hudson's claims for breach of contract and for "contractual indemnity," by way, it seems, of tort, the claims appear to overlap, factually.

        The question of whether an alleged breach of the contract between Hudson and J&T, or an heretofore unspecified tort committed by J&T, might or might not allow for such damages – *i.e.*, for Hudson to be "made whole" -- is an issue that has not been briefed by the parties, either factually, i.e. the contract provisions, or legally, i.e. the basis, in law or contract, for such a recovery.  As stated above, no party has identified which specific portion of the contract between Hudson and J&T is alleged to have been breached, and the parties have neither stipulated to nor briefed what law applies to each specific claim made by Hudson against J&T, whether as a "breach of contract" claim or as the argued "contractual claim," something it would seem, in tort in some fashion  The only reference that has been made to an applicable governing body of law is J&T's argument that Hudson has no claim for *tort* indemnity against J&T under the general maritime law.[5]

        This Court notes the parties' failure to identify what law applies **to each specific claim asserted against each party and under what factual bases the claim is asserted** has been a

---

[5] J&T cites *Hardy v. Gulf Oil Corp.*, 949 F.2d 826, 833-34 (5ᵗʰ ir. 1992) for this proposition.  Hudson does not dispute this argument, but neither has either party stipulated to nor briefed what law applies to Hudson's *tort* claim against J&T.

repeated refrain throughout the course of this litigation.  At various times, various parties have indicated general maritime law applies to certain of their claims, and at other times, the parties have urged the court to consider their claims under Louisiana law.  In the instant motion, the source of any liability on the part of J&T to Hudson, pursuant to the "breach of contract claim," arguably will be contained within the specific language and terms of the Master Indemnity Agreement between the parties and interpretation of that language will be governed by the nature of the contract, itself – i.e. whether maritime in nature or not.  Because the parties have failed to identify which specific provision(s) of the Master Indemnity Agreement govern the alleged contractually-imposed duty of J&T to provide competent welders, which specific provision(s) of the Master Indemnity Agreement were allegedly breached, and what law applies to the contract[6], and thus, Hudson's claims for damages as a result of breach of contract between J&T and Hudson, this Court cannot determine whether there is a potential for liability on the part of J&T to Hudson under the factual and legal circumstances alleged.  In particular, the scope of the damages claimed by Hudson against J&T for the alleged breach of contract can only be known when the law applicable to the contract is known, that is, the scope of damages allowed under the identified law, if not addressed within the language of the contract, will likely be a matter of policy that can only be known when the applicable law has been determined.

Consequently, because the parties have failed to identify which specific portions of the contract are at play and, also, what law applies to the contract, as well as the other claims pled by

---

[6]Although it is well settled, legally, the general maritime law applies to contracts to repair vessels, but not to contracts to construct vessels, it is not clear whether the contract at issue was purely one to repair or was one to construct a vessel, as it would seem the contract embraced not only vessel repair, but also, construction of new living quarters and adaptation of the vessel for a new use.

Hudson against J&T and Alea, this Court cannot determine whether J&T and Alea are entitled to the relief they seek, that is, a dismissal of Hudson's "contractual" claims – whether for "breach of contract" or for "contractual indemnity," or tort.  Consequently, this aspect of J&T's motion is DENIED for failure of J&T [and Alea] to carry their burdens.

However, Alea, also, argues notwithstanding any of the foregoing, as to any claim for "breach of contract" and "contractual indemnity" made against it by Hudson pursuant to the Direct Action Statute, the Direct Action Statute applies only to tort and not contractual claims.  Hudson argues "[m]erely because negligent performance of the work under a contact may also constitute a breach of the contract, does not remove the negligent performance as a tort claim that would be covered under Alea's policy and be subject to the Louisiana Direct Action Statute."  Hudson cites the case of *Gray & Co. Inc. v. Ranger Ins. Co.*, 292 So. 2d 829, 830 (La. App. 1st Cir. 1974) in support of its position, which states in relevant part:

> In any case involving an obligation, liability must result from a breach of duty, whether the duty arises out of the undertakings of the parties, from their voluntary acts, by operation of law or otherwise. It is entirely possible that the same duty might have more than one source, **as in the case of the negligent breach of a contractual obligation, in which case a cause of action arises from both the breach and the negligence**.

(emphasis added) *See also Alcoa S.S. Co. v. Charles Ferran & Co.*, 383 F.2d 46, 50 (5th Cit. 1967) ("It is well settled that a contract to repair a vessel is maritime. . . . Consequently, a shipowner has a maritime cause of action whether he sues in contract for a breach of warranty of workmanlike service or in tort for the ***negligent performance of a maritime contract***. . . . . Federal law governs the construction of the terms of the repair contract, [. . . . ], and would also appear to govern the standard of performance due under the contract.") (emphasis added).

-12-

As of this writing, this Court does not have a clear conceptual understanding of what a claim for "negligent breach of contract" entails as to its legal consequence as it straddles both contract and tort. However, both the Fifth Circuit and Louisiana courts appear to allow a claim couched *in tort* for "negligent performance of a contract." Although the jurisprudence is clear the Direct Action Statute does not apply to contractual claims, but does apply to tort claims, to the extent Hudson has alleged a claim couched *in tort* for negligent performance of a contractual obligation against J&T, which quite frankly, also is not clear, in theory, the direct action against Alea with respect to that claim arguably, it would seem, should remain. Once again, however, the parties have failed to adequately clarify what claims have been alleged in this matter and what claims are sought to be dismissed, as well as the factual and legal basis for those claims, and whether the claims are couched in contract[7] or tort arguing "negligent performance of a contract."[8] Unless or until the parties clarify what claims are being made and what claims are sought to be dismissed, this Court cannot go forward.

Consequently, Alea's motion seeking dismissal of "those claims" brought by Hudson against Alea pursuant to the Direct Action Statute and based upon "breach of contract" or "contractual indemnity" is DENIED for failure of the parties to carry their burdens.

---

[7] For instance, as will be discussed in Paragraph 3 of this Ruling, the parties have failed to clarify whether the claims for "indemnification" in this case are claims for indemnification under a contract, or whether the claims for "indemnification" are more accurately characterized as claims for contribution for another party's breach of contract, or "negligent performance of a contract" which has caused damage, *i.e.*, where the pleading party seeks to be made whole from the damage.

[8] Again, it remains unclear whether the "those claims" are the claims alleged for negligent performance of a contract as alluded to in *Alcoa* and *Gray*, or are "those claims" alleged as straight-up negligence claims, separate and apart from the contract (where Hudson appears to be asking for tort indemnification and/or contribution under the general maritime law, separate and apart from the contract, which raises its own questions). This Court finds itself in a morass of generalized, broadly spoken allegations lacking clear legal identity or significance.

2.      **Hudson's "Tort" Claims**

This Court, also, is not clear whether any alleged "tort" claims made by Hudson against J&T are the subject of the motion and what, if any, tort claims, of what nature, are being made by Hudson.[9] As an initial matter, as this Court has already noted, this Court is unclear as to the nature of any such claim for damages as pled by Hudson which might be argued to fall under tort and not contract. Additionally, the parties have not stipulated to or briefed what the nature and elements of those claims might be and what law would apply to any such claim for "tort indemnity" that Hudson might have against J&T, nor has either directly, and with specificity, addressed whether and how such "tort indemnity" might flow to the specific type of claim made, should the general maritime law apply to the "tort indemnity" claim made. Consequently, this aspect of J&T and Alea's motion is also DENIED for failure of J&T and Alea to carry their burdens.[10]

3.      **Indemnification under the J&T-Hudson Contract**

With respect to a particular indemnification provision found within the Master Indemnity Agreement between Hudson and J&T – and in regard to J&T's interpretation of that particular provision – this Court notes the foregoing is a separate matter. J&T and Alea argue the Master Indemnity Agreement between the parties does not contain an indemnification provision that runs in favor of Hudson. The contractual provision in question states:

ARTICLE VI

Contractor/Subcontractor agrees to indemnify, defend and hold harmless Shipyard,

---

[9]See fn 4.

[10] It is not lost on this Court the legal basis for the claims and "damages" claimed by Hudson are not as clear as one might desire, which points to the recognition the legal bases for the "damages" claimed by Ryan Marine against Hudson, also, are not as clear as one might desire, however, that begs the question under the procedural vehicles now before the Court.

its partners, agents, employees and subcontractors against any and all liability claims, demands, losses, suits, liens, causes of action of every kind and character and the costs thereof including, without limitation, court costs, and other litigation expenses, attorney's fees, settlements, judgments, fines and penalties (including punitive damages) for damages to persons and/or property (including, but not limited to, claims, demands, or suits for bodily injuries, emotional and psychological injuries, illnesses, diseases, death, loss of services, maintenance and cure, wages, workers compensation or property) which may be brought against Shipyard by Contractor/Subcontractor's employees or the employees of its subcontractors incident to, arising out of, in connection with, or resulting from the activities of Contractor/Subcontractor, its employees and agents or its subcontractors and their employees and agents, or in connection with the work to be performed, services to be rendered, or materials to be furnished by Contractor/Subcontractor whether occasioned, brought about, or caused in whole or in part by the negligence of Shipyard, its agents, directors, officers, employees, servants, subcontractors, customers or otherwise, or by any defect in the property or unseaworthiness or any vessel on the Shipyard.....

Review of the foregoing indemnification provision shows it does not provide for *contractual* indemnification in favor of Hudson under the quoted contractual provision. Rather, the foregoing provision provides for *contractual* indemnification in favor of Hudson should an employee of J&T sue Hudson. That has not occurred is this case. Therefore, as a matter of law, the specific indemnification provision in the Master Indemnity Agreement between Hudson and J&T does not provide for *contractual* indemnification in Hudson's favor under the factual circumstances of this case; however Hudson, it seems, does not urge *contractual* indemnification pursuant to a provision within the contract as J&T argues. Consequently, the motions for partial summary judgment filed by J&T and Alea seeking dismissal of Hudson's *contractual* indemnification claim based on the specific indemnification provision cited and contained in the Master Indemnity Agreement is GRANTED, and this claim is DISMISSED WITH PREJUDICE. However, this ruling in no way affects Hudson's claim for "contractual indemnity" *as a damage* flowing from the alleged breach of the contract or "negligent performance of a contract" as between J&T and Hudson as referenced

-15-

in the preceding section of this ruling, to the extent those claims might otherwise exist and be found legally viable.

## IV.     Conclusion

Considering the foregoing, and for the reasons contained herein,

IT IS ORDERED that the Motion for Partial Summary Judgment [Doc. 143] filed by third-party defendant J&T Contractors, Inc and the Motion for Partial Summary Judgment [Doc. 148] filed by third-party defendant Alea London Limited are GRANTED IN PART AND DENIED IN PART. The request seeking dismissal of Hudson's contractual indemnification claim based on the specific indemnification provision cited and contained in the Master Indemnity Agreement between Hudson and J&T is GRANTED, and this claim is dismissed with prejudice.   In all other respects, the motions for partial summary judgment are DENIED for the failure of the parties to carry their burdens.

THUS DONE AND SIGNED in Lafayette, Louisiana, this ___21___ day of January 2011.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

-16-