# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### LAFAYETTE DIVISION

| | | |
|---|---|---|
| **RYAN MARINE SERVICES, INC., ET AL** | * | **CIVIL ACTION NO. 06-2245** |
| **VERSUS** | * | **MAGISTRATE JUDGE HILL** |
| **HUDSON DRYDOCKS, INC., ET AL** | * | **BY CONSENT OF THE PARTIES** |

## RULING ON MOTIONS FOR PARTIAL SUMMARY JUDGMENT ON FRAUD-BASED PUNITIVE DAMAGE CLAIMS

Pending before the Court is the Motion for Partial Summary Judgment on Behalf of Hudson Drydocks, Inc. ("Hudson") on Fraud-Based Punitive Damage Claims [rec. doc. 217], and Alea London Limited's ("Alea") Motion for Partial Summary Judgment Regarding Punitive Damages Claim by Plaintiffs, Hudson Drydocks, Inc. and Great American Insurance Company ("Great American") [rec. doc. 224]. Plaintiffs, Ryan Marine Services, Inc. ("Ryan") and Columbia Star, Inc. ("Columbia Star"), filed opposition to both motions. [rec. docs. 240, 244]. Great American filed opposition to Alea's motion. [rec. doc. 237]. Hudson filed a response to Alea's Motion [rec. doc. 234]. Alea filed a reply memorandum. [rec. doc. 253].

The Court held oral argument on September 21, 2011, after which I took the motions under advisement.  For the following reasons, Hudson's motion is **GRANTED**, and Alea's motion is **DISMISSED AS MOOT**.

### *Background*

On December 29, 2005, Ryan entered into a written a time and materials contract with Hudson to repair and overhaul a vessel, the M/V RMS CITATION, which was owned by Columbia and operated by Ryan.  The repair work, which was performed at Hudson's drydock facility, began two days earlier on December 27, 2005, and was completed in late September, 2006.  In association with the repairs to the vessel, Hudson hired welders and fitters supplied by J&T Contractors, Inc. ("J&T").

During the course of the repair work, the vessel caught fire.  Ryan asserts that Hudson's unqualified personnel caused the fire.  Additionally, plaintiffs contend that the cleanup and repair after the fire caused the vessel to be in drydock for an unreasonably extended period of time.  Plaintiffs also argue that Hudson overcharged or misrepresented the nature of its services.

On November 22, 2006, Ryan and Columbia filed an action for breach of contract and fraud against Hudson, J&T, and their insurers.  For the fraud claim, plaintiffs allege that Hudson, through its billings, represented that it used materials

in the repair of the boat that it did not, that Hudson's employees worked on the boat on dates and at times that they did not, and that Hudson's employees were qualified to do the work which they were not.  [rec. doc. 83, ¶ 26].  Plaintiffs further assert that Hudson committed these acts "with a degree of culpable mental state including malice that *allows for the imposition of punitive or exemplary damages*."  (emphasis added).  [rec. doc. 83, ¶ XXVII].

Hudson and Alea filed the instant motions for partial summary judgment. Hudson asserts that plaintiffs cannot recover on their punitive damages claim and Alea asserts that the policy of Comprehensive General Liability ("CGL") it issued to J&T, under which Hudson claims additional insured status, specifically excludes coverage for punitive or exemplary damages.

### Summary Judgment Standard

Fed.  R. Civ. Proc. 56(a) provides that the court shall grant summary judgment if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  The standard for granting summary judgment remains unchanged after the 2010 amendments.  Advisory Committee Notes to Subdivision (a).

## *Analysis*

### 1. Hudson's Motion

In the Second Amended and Supplemental Complaint, plaintiffs allege that Hudson, through its billings, represented that it used materials in the repair of the boat that it did not, that Hudson's employees worked on the boat on dates and at times that they, in fact, did not, and that Hudson's employees were qualified to do the required work when, in fact, they were not.  [rec. doc. 83, ¶ 26].  Plaintiffs further assert that Hudson committed these acts "with a degree of culpable mental state including malice that *allows for the imposition of punitive or exemplary damages*."  (emphasis added).  [rec. doc. 83, ¶ XXVII].

Hudson filed the instant motion for partial summary judgment, asserting that plaintiffs cannot recover punitive damages under the general maritime law for fraudulent breach of contract.  Alternatively, it argues that if punitive damages are available, then plaintiffs must prove fraud by clear and convincing evidence, and plaintiffs' punitive recovery is limited to a 1 to 1 ratio of any award of compensatory damages.

First, Hudson argues that under maritime law, punitive damages are unavailable in a purely contractual case.  Specifically, Hudson contends: (1) as a

matter of law plaintiffs cannot recover punitive damages for a fraudulent breach of contract under the maritime law, and (2) there are no cases under maritime law which support an analysis or jury instruction as to the requisite degree of conduct necessary to recover punitive damages for allegations of fraud in a contract case.

In support of its argument that punitive damages can only be awarded in admiralty cases based in tort, Hudson relies on *Guevara v. Maritime Overseas Corp.*, 59 F.3d 1496 (5th Cir. 1995), and cases from outside of the Fifth Circuit.[1] *Guevara* held that punitive damages are not available in cases of willful nonpayment in an action for maintenance and cure, whether it be tort-like or contract-like, under the general maritime law.  *Id*. at 1513.  However, *Guevara* was abrogated by the Supreme Court in *Atlantic Sounding Co., Inc. v. Townsend*, ___U.S. ___, 129 S.Ct. 2561, 174 L.Ed.2d 382 (2009), which held that, as a matter of general maritime law, a seaman *was* entitled to seek punitive damages for his employer's alleged willful and wanton disregard of its maintenance and cure obligation.  *Id*. at 2575.

It is the opinion of the Supreme Court in *Townsend* on which Ryan relies in this case.

---

[1]This included *Thyssen, Inc. v. S.S. Fortune Star*, 777 F.2d 57 (2nd Cir. 1985), which held that punitive damages were not available for a breach of the contract of carriage.

In reaching its decision in *Townsend*, the Supreme Court cited three central points.  First, punitive damages have long been available at common law.  *Id*. at 2569.  Second, the common-law tradition of punitive damages extends to maritime claims.  *Id*.  Third, no evidence exists that claims for maintenance and cure were excluded from this general admiralty rule.  *Id*.

However, the Supreme Court did not determine whether punitive damages were available in cases that do not involve personal injury.  In dissent, Justice Alito addressed this issue as follows:

> There is one remaining question in this case, namely, whether punitive damages are permitted when a seaman asserts a general maritime law maintenance and cure claim that is not based on personal injury. In *Cortes* [*v. Baltimore Insular Lines*], 287 U.S., at 371, 53 S.Ct. 173, the Court explained that the duty to furnish maintenance and cure "is one annexed to the employment. . . . Contractual it is in the sense that it has its source in a relation which is contractual in origin, but, given the relation, no agreement is competent to abrogate the incident." The duty is thus essentially quasicontractual, and therefore, in those instances in which the seaman does not suffer personal injury, recovery should be governed by the law of quasi-contract. See Restatement (Second) of Contracts §§ 4b, 12f (1979); Restatement of Restitution §§ 113-114 (1936); 1 D. Dobbs, Law of Remedies § 4.2(3), pp 580 (2d ed.1993). Thus, an award of punitive damages is not appropriate.  *See also Guevara*, 59 F.3d. at 1513.[2]

---

[2]The majority did not dispute that *Townsend* did not deal with non-personal injury claims.  The majority addressed the issue raised in the dissent as follows: "For those maintenance and cure claims that do not involve personal injury (and thus cannot be asserted under the *Jones Act)*, the dissent argues that punitive damages should be barred because such claims are based in contract, not tort. *See post*, at 2579. But the right of maintenance and cure "was firmly established in the

*Id*. at 2579.

Ryan argues that absent statutory restrictions, the punitive damages remedy exists and should be applied in this case.  [rec. doc. 240, p. 4].  The holding in *Townsend* deals solely with claims for maintenance and cure by an injured seaman. The Fifth Circuit has apparently not had the opportunity to consider the holding in *Townsend*.³ *Nelon v. Cenac Towing Co., L.L.C.*, 2011 WL 289040 (E.D. La. Jan. 25, 2011) (*citing Townsend*, 129 S.Ct. at 2575).

In *Rogers v. Resolve Marine*, 2009 WL 2984199 (E.D. La. Sept. 11, 2009), Judge Barbier considered what effect the Supreme Court's ruling in *Townsend* had on plaintiffs' ability to seek punitive damages for the alleged gross, willful, and wanton negligence of the defendant in causing plaintiffs' injuries.  There, plaintiff argued that *Townsend* should be read broadly to extend the availability of punitive damages under general maritime law beyond maintenance and cure cases.  While

---

maritime law long before recognition of the distinction between tort and contract." *O'Donnell v. Great Lakes Dredge & Dock Co.*, 318 U.S. 36, 42, 63 S.Ct. 488, 87 L.Ed. 596 (1943). Although the right has been described as incident to contract, it cannot be modified or waived. *See Cortes v. Baltimore Insular Line, Inc.*, 287 U.S. 367, 372, 53 S.Ct. 173, 77 L.Ed. 368 (1932)."  *Id*. at 2574 n. 9.

³ `[*Townsend*], in effect, restores the previous Fifth Circuit case law under which both punitive damages and attorney's fees are available in cases where an employer has willfully failed to pay maintenance and cure, *see, e.g., Morales v. Garijak, Inc.*, 829 F.2d 1355, 1358 (5th Cir.1987), albeit with one modification: the Supreme Court has suggested that under general maritime law, the amount of punitive damages should not exceed the amount of compensatory relief awarded." *Nelon* (*citing Exxon Shipping Co. v. Baker*, 554 U.S. 471, 513-14 (2008)).

acknowledging that the law on this issue remained unsettled, Judge Barbier

allowed plaintiff to amend his complaint to assert this claim, citing a recent opinion

by Judge Berrigan (also of the Eastern District) in which she ruled that "[i]n light

of the movement of the law in this area" the Court would add the damages [for loss

of society] as "a separate part of the damages sought in this case . . . [to] . . . avoid

retrial in the event the law changes."  *In re Md. Marine, Inc.*, 2009 U.S. Dist.

LEXIS 58957 * 17 (E.D. La. July 9, 2009).  *See also In re Oil Spill by the Oil Rig*

*DEEPWATER HORIZON in the Gulf of Mexico, on April 20, 2010*, 2011 WL

4575696 (E.D. La. Sept. 30, 2011) (Barbier, J.) ("[a]s explained in *Townsend* . . .

neither the Jones Act nor the Death on the High Seas Act speaks to negligence

claims asserted by non-seamen under general maritime law, and punitive damages

have long been available at common law.  The Court finds punitive damages are

available to . . . plaintiffs who are not seamen.").

As of yet, the Fifth Circuit has not addressed the issues raised by this

motion.  Similarly, the Court has been unable to locate an opinion from any other

circuit addressing the scope of *Townsend* in a contract case.  Accordingly, the

Court will undertake the analysis used by the Supreme Court in *Townsend*.

As the Supreme Court recognized in *Townsend,* punitive damages have long been available at common law.  *Id.* at 2569.  For example, the Court noted that as early as 1852 the Supreme Court recognized what it called the "well-established principle of the common law, that in actions of trespass and all actions on the case for torts, a jury may inflict what are called exemplary, punitive, or vindictive damages upon a defendant . . ." *Id.* at 2567, *quoting Day v. Wood worth*, 13 How. 363, 14 L.Ed. 181 (1852).

However, that does not mean that punitive or exemplary damages are available in *all* cases under the common law.  As the Fifth Circuit recognized in *Guevara v. Maritime Overseas Corp*., 59 F.3d 1496, 1512 (5th Cir 1995), punitive damages are generally *unavailable* for breach of contract.  This principle of law was also recognized by Justice Alito and his dissent in *Townsend.*  129 S.Ct at 2579.

The commentators agree:

> "Punitive damages, . . . are granted to punish malicious or willful and wanton conduct. . . .  Although such awards are increasingly important in tort litigation, punitive damages are usually not awarded in contract actions, no matter how egregious the breach." 11 *Corbin on Contracts*, § 59.2 (2005).

"[T]he purpose of contract damages is to compensate a party injured by a breach of contract for damages attributable to the breach, not to punish the breaching party. For this reason, exemplary or punitive damages are not generally recoverable in breach of contract actions, even where the contract is maliciously or intentionally breached."  24 *Williston on Contracts* § 65.2 (4th ed.)

"Punitive damages are not recoverable for a breach of contract unless the conduct constituting the breach is also a tort for which punitive damages are recoverable.

**Comment**:

*a. Compensation not punishment.* The purposes of awarding contract damages is to compensate the injured party. . . . For this reason, courts in contract cases do not award damages to punish the party in breach or to serve as an example to others unless the conduct constituting the breach is also a tort for which punitive damages are recoverable."  Restatement (Second) of Contracts § 355 (2011).

Based on the above, the Court concludes that, generally, punitive or exemplary damages are not recoverable in contract cases.  Punitive or exemplary damages are recoverable only if the conduct which constitutes the breach is also a tort for which punitive damages are recoverable.  (*See Thyssen, Inc*., 777 F. 2d at 62-66 for a detailed discussion of the availability of punitive damages in maritime contract cases.)

While at least some of the conduct which Ryan accuses Hudson of committing would, if knowingly done, constitute fraud, claims of over-billing for

work and material used on a repair job is a fairly common complaint in cases such as this.  Ryan has not cited the Court to any case where the proof of such allegations has resulted in an award of punitive damages in a contract case.

The Court concedes that, because of *Townsend*, the law is unclear and clearly evolving.  Therefore, the Court would at least consider, with appropriate safeguards, allowing the jury to decide whether Hudson is guilty of wanton or willful misconduct, whether exemplary or punitive damages should be awarded and, if so, in what amount.  If the Court, after consultation with counsel, agrees to follow this course, the judgment would not include any such award, but a jury finding will have been made so that if the Court is wrong in this ruling, and if the Fifth Circuit concludes that punitive damages are available in this case, the jury will have made a finding which can then be reduced to judgment, and the case will not have to be retried.  A similar approach has been proposed by Judge Barrigan of the Eastern District under similar circumstances.  *See In re Maryland Marine, Inc.*, 641 F.Supp.2d 579 (E. D. La., 2009) (Berrigan, J.).

Therefore, the Court holds that punitive damages are not recoverable in a breach of contract case unless the conduct constituting the breach is also a tort for which punitive damages are recoverable.  Since the conduct which allegedly

11

constituted this breach does not constitute a tort for which punitive damages are recoverable, this court need go no farther with the *Townsend* analysis.

Accordingly, for the above reasons, Hudson's motion for partial summary judgment is **GRANTED**.

## 2. Alea's Motion

Alea, in its capacity as the insurer of J&T and the "purported" additional insurer of Hudson, moves for partial summary judgment as to plaintiffs' claim for punitive damages or exemplary damages on the grounds that its policy excludes coverage for such claims under the Alea Certificate of Commercial General Liability Insurance ("CGL").  [rec. doc. 224, p. 1].

By prior ruling in this case, the Court has held that the "care, custody or control" exclusion in the Alea CGL policy issued to J&T excludes coverage for Hudson as an additional insured. [rec. doc. 267].  Accordingly, this motion by Alea is now moot, and will be dismissed as such.

Nevertheless, the court will address, albeit briefly, the motion by Alea on its exclusion for exemplary or punitive damages for the sake of completeness.

The law of the state where the marine insurance contract was issued and delivered (Louisiana here) governs the interpretation of the insurance contract.

*Elevating Boats, Inc. v. Gulf Coast Marine, Inc.*, 766 F.2d 195, 198 (5th Cir. 1985). In deciding cases governed by state law, the Court is bound by applicable decisions of the state's highest court. *Cochran v. B.J. Services Co. USA*, 302 F.3d 499, 501 (5th Cir. 2002). When the state's highest court has not spoken on the issue, opinions of the intermediate appellate courts can be used for guidance.

When determining whether or not a policy affords coverage for an incident, it is the burden of the insured to prove the incident falls within the policy's terms. *Doerr v. Mobil Oil Corp.*, 00-0947 (La. 12/19/00); 774 So.2d 119, 124. On the other hand, the insurer bears the burden of proving the applicability of an exclusion in the policy. *Id*. Importantly, when making this determination, any ambiguities within the policy must be construed in favor of the insured to effect, not deny, coverage. *Id*.

If an additional insured is provided coverage under an insurance policy, that coverage is subject, of course, to the same limitations and exclusions as is the coverage of the named insured

Alea's Certificate No. ALEA 2865 provides CGL coverage to J&T as named insured for the period following July 11, 2005. [rec. doc. 224, Exhibit A]. The policy contains the following exclusion at Endorsement No. L031:

13

## EXCLUSION – PUNITIVE OR EXEMPLARY DAMAGES

This endorsement modifies policy insurance provided under the

following:

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to COVERAGES A and B:

This insurance does not apply to a claim of or indemnification for
punitive or exemplary damages.  If a suit shall have been brought
against you for a claim within the coverage provided under the policy,
seeking both compensatory and punitive or exemplary damages, then
we will afford a defense for such action.  We shall not have an
obligation to pay for any costs, interest or damages attributable to
punitive or exemplary damages.

[rec. doc. 224, Exhibit A, p. 31].

These types of exclusions have been upheld by both federal and state courts

in Louisiana.  *Meredith v. Louisiana Federation of Teachers*, 209 F.3d 398, 407-8

(5th Cir. 2000); *Younter v. State Farm Mut. Auto Ins. Co.*, 01-601 (La. App. 5 Cir.

11/27/01); 802 So.2d 950, 951-2; *Eaglin v. Champion Ins. Co.*, 558 So.2d 284, 288

(La. App. 3rd Cir. 1990).

Neither Hudson [rec. doc. 234] nor Great American [rec. doc. 237] dispute

Alea's position.  Plaintiffs agree that the Alea CGL policy unambiguously excludes

coverage for punitive/exemplary damages that might be imposed against J&T.

14

However, plaintiffs argue that the punitive damages exclusion does not exclude coverage for exemplary damages imposed against J&T for the actions of its employees and additional insureds, such as Hudson. [rec. doc. 244. p. 4].

However, even assuming that the Alea policy provides coverage for Hudson, and that the "care, custody and control" exclusion in the Alea CGL policy does not exclude coverage for Hudson (which the Court has previously decided adversely to Hudson), this exclusion would still apply.

When endorsements add additional insureds to a policy, those additional insureds enjoy the same benefits, and are subject to the same restrictions and exclusions, as is the named insured, absent policy language to the contrary.  *Cal-Dive Intern., v. Seabright Ins. Co.*, 627 F.3d 110, 114 (5th Cir. 2010) (*citing Landerman v. Liberty Services, Inc.*, 637 So.2d 809, 812–13 (La. App. 1 Cir. 1994)).  No such policy language exists in the policy at issue in this case. Accordingly, under clearly established law, the exclusion for exemplary or punitive damages in the Alea policy excludes coverage for punitive damages in this case.

### *Conclusion*

For the foregoing reasons, the Motion for Partial Summary Judgment on Behalf of Hudson Drydocks, Inc. on Fraud-Based Punitive Damage Claims [rec.

15

doc. 217], is **GRANTED,** and Alea London Limited's Motion for Partial Summary Judgment Regarding Punitive Damages Claim by Plaintiffs, Hudson Drydocks, Inc. and Great American Insurance Company [rec. doc. 224], is **DISMISSED AS MOOT.**

Signed December 13, 2011, at Lafayette, Louisiana.

C. Michael Sill

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

16